Patricia GEORGES and Joseph Georges,
her father, Plaintiffs,

v.

Thomas HENNESSEY, Arthur Johnson,
and U. S. Government Department of
the Army, Defendants.

No. 78 C 958.

United States District Court,
E. D. New York.

Aug. 31, 1982.

Pasquale P. Caiazza, Staten Island, N. Y.,
for plaintiffs.

Gladstein & Isaac, New York City, for
defendant Thomas Hennessey; Jane Maguire, Garden City, N. Y., of counsel.

Edward R. Korman, U. S. Atty., E. D. N.
Y., Brooklyn, N. Y., for Arthur Johnson and
U. S. Government Dept. of the Army; Ben
Wiles, Asst. U. S. Atty., Brooklyn, N. Y., of
counsel.

BARTELS, District Judge.

On September 9, 1977, at 9:15 A.M., an
accident occurred at Narrows Road and
Cayuga Avenue, Staten Island, New York,
when a motorcycle owned and operated by
Thomas Hennessey, on which the plaintiff,
Patricia Georges, was a passenger, collided
with a United States Army vehicle, catapulting the plaintiff against the Army vehicle, causing her severe dental injury.
Plaintiff claims that it was the sudden
change of direction by the Army vehicle
that caused the collision while the driver of
the Army vehicle claims that he proceeded
with due caution to change lanes for the
purpose of parking his vehicle and Hennessey failed to give him the right of way. At
all events, plaintiff sued both the United
States Government and Thomas Hennessey
alleging negligence on the part of both. At
the same time each cross claimed against
the other for indemnification in the event
judgment was rendered in favor of the
plaintiff. Hennessey demanded and received a jury trial as of right pursuant to
the Seventh Amendment, in which trial
plaintiff's claim against the Government
was presented at the same time. Pursuant
to the Federal Torts Claim Act, 28 U.S.C.
§§ 2671 *et seq.*, plaintiff was required to
try her case against the Government without a jury, although the Court had the
option to consider as advisory any jury verdict concerning the liability of the United
States.

The Court bifurcated the trial, the jury being required to first determine liability against the defendants and thereafter to apportion for contribution purposes any joint liability between the two defendants. The trial was held from July 26 to July 30, 1982, whereupon the jury returned a verdict holding the Government completely liable and exonerating Hennessey. At this point the jury was discharged and the Court heard evidence on the question of damages, which will be later discussed. While the jury determined the non-liability of the defendant Hennessey, the liability of the Government could only be resolved by the Court pursuant to 28 U.S.C. § 2402. This is true in spite of the fact that the jury found the Government 100% liable. The verdict against the Government was merely advisory, to be wholly or partially accepted by the Court or completely rejected.

The substantive issues raised by this case are of no special concern. The questions of negligence and causation raised are matters which this Court has considered many times before. The procedural questions, however, presented by the structure of this case are quite novel. They emanate from the fact that a private individual and the government have been joined as codefendants in a case where the former has exercised his right to a jury trial and where the latter's liability must be decided by the Court. The problem is highlighted where the government, as in this case, cross claims for contribution against the private party. Although one would believe this situation is not uncommon, neither the parties nor the Court has discovered any authorities which expressly deal with it. Apparently the issue is one of first impression.

Certain fundamental questions of tort law need first be established. At common law, it was traditionally the case that an active tortfeasor enjoyed no private right to contribution. *Ward v. Iroquois Gas Corp.,* 258 N.Y. 124, 179 N.E. 317 (1932); *Price v. Ryan,* 255 N.Y. 16, 173 N.E. 907 (1931). Whomever the injured plaintiff chose to sue for damages was forced to bear the full brunt of the joint liability with recourse against noone. Rights of contribution be-

tween joint tortfeasors only existed where a joint judgment had been recovered against two or more defendants at the same time and one defendant had paid more than his share. *Taft v. Shaffer Trucking, Inc.,* 52 App.Div.2d 255, 383 N.Y.S.2d 744, 747 (4th Dept., 1976). The shares were usually divided pro rata on the basis that "equality is equity". Moreover, strict pleading rules prohibited joint tortfeasors accused of active negligence from impleading other tortfeasors who were actively negligent. The plaintiff's choice of defendants therefore was dispositive.

*Dole v. Dow Chemical,* 30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288 (1972), however, radically altered this scenario. The Court of Appeals dissolved the distinction between active and passive negligence and permitted contribution on the basis of each tortfeasor's comparative responsibility for the injury. *Taft, supra.* It also did away with the requirement that a joint tort judgment be obtained against the contributing tortfeasors. To effectuate this change, new CPLR § 1401 was enacted. It provides that "two or more persons who are subject to liability for damages for the same personal injury, injury to property or wrongful death, may claim contribution among them whether or not an action has been brought or a judgment has been rendered against the person for whom contribution is sought." The legislative report of the Judicial Conference accompanying the Act (1974 Rep.Jud.Conf. to Legislature, McKinney's Sess. Laws 1805–06) makes it clear that this section was not limited to contribution among joint tortfeasors, but was to include "concurrent", "successive and independent" and "alternative" tortfeasors as well. It is the fact of liability to the same person for the same harm rather than the legal theory upon which the liability is based which controls. *Id.*

Although some question has been raised as to the rights of contribution among "independent and successive" tortfeasors under certain circumstances, *Engram v. Kingston Hospital,* 371 N.Y.S.2d 364, 82 Misc.2d 540 (1975), no question exists where the

alleged joint tortfeasors are concurrent and contributed to cause the same injury. That is the very situation which was alleged to exist here. Indeed, the case involving two automobile drivers whose mutual and concurrent negligence result in a collision between them which causes injury to a third independent and innocent party is prototypical. Despite these developments in the law, it is still the case that each active tortfeasor is jointly and severally liable. Moreover, such rights of contribution have no bearing on the rights of the plaintiff. They are solely *inter se* the defendants. According to CPLR § 1403 such claims may be resolved in a separate action or by cross claim, counterclaim or third-party claim in a pending action.

In the case at bar, the § 1401 rights to contribution were raised by way of cross claims, each party charging the other with liability for plaintiff's injuries. As is ordinarily done in these circumstances, the fact finding body was prepared to apportion the liability between the respective defendants if such liability was found to exist. But the situation in this case raises different procedural possibilities.

Once, however, the jury found Hennessey not to be liable as a joint tortfeasor, the Government was collaterally estopped from ever raising the issue. The same would be true if the jury had found Hennessey liable as a joint tortfeasor. But the jury's determination that the Government was or was not a joint tortfeasor would not be binding upon the Court since the jury's verdict would be only advisory. Having heard all the evidence, the Court in this case agrees with the jury's advisory verdict and finds that the Government is fully liable. Nevertheless, the Government argues that in determining its liability the Court has the right to credit the Government's cross claim against Hennessey. Since Hennessey is not before the Court for the determination of liability, this could only be accomplished by the Court reducing the amount of the Government's liability by the amount of its cross claim. This would completely nullify the collateral estoppel effect of the jury's verdict as to Hennessey and reduce the

amount payable to the plaintiff on the theory that this Court could still find Hennessey liable as a joint tortfeasor.

■ The Government argues that the FTCA requires that cross claims as well as the claim in chief and any set-offs or counterclaims are to be tried by the Court. It cites several cases which it claims support that proposition. *McElrath v. United States*, 102 U.S. 426, 26 L.Ed. 189 (1880); *Black v. United States*, 421 F.2d 255, 257 (10th Cir. 1970); *United States v. Sommers*, 351 F.2d 354 (10th Cir. 1965); *Moloney v. United States*, 354 F.Supp. 480 (S.D.N.Y. 1972); *Busey v. Washington*, 225 F.Supp. 416, 419 (D.D.C.1964); and *Terminal Warehouse of New Jersey v. United States*, 91 F.Supp. 327, 328 (D.N.J.1950). None of these cases are apposite since they involve a counterclaim raised by the Government as either defendant or a third party against the plaintiff. In those cases the plaintiff elected to sue the Government under the FTCA and naturally should be bound by the conditions imposed by the statutory scheme denying any right to a jury trial and limiting the adjudication of all claims to one fact finder. Conversely, where the Government sues either directly or by way of cross claim or impleader, there is no requirement for two different fact finders as might be required by the FTCA even though joint tortfeasors are involved. As Hennessey contends, where the Government is suing instead of being sued, the right to a jury trial survives. *City of Pittsburgh v. United States*, 359 F.2d 564 (3d Cir. 1966); *Wood v. United Air Lines, Inc.*, 216 F.Supp. 346 (E.D.N.Y.1963); *United States v. Rosati*, 97 F.Supp. 747 (D.N.J.1951); *United States v. Schlitz*, 9 F.R.D. 259 (E.D.Va.1949). Since the jury has exonerated Hennessey, the Government has no right to assert any cross claim or to hold Hennessey liable either directly or indirectly for contribution.

■ This leaves unresolved the question of damages, an issue which in personal injury cases, such as the present one, cannot be decided with mathematical precision. The Court must rely upon the nature of the

accident and the testimony of the plaintiff and of the dental physicians describing plaintiff's injury, pain and suffering.

Before the accident the condition of plaintiff's mouth and her health were excellent. She was in her third year at the Staten Island Community College, taking five classes, and working at off hours at the Pantry Supermarket, earning approximately $80 per week gross. When she was thrown from the motorcycle the left side of her face came into contact with the truck and she also injured her left shoulder, hip, leg and knee. She was unconscious for a short time after the accident and on becoming conscious she was bleeding and spitting blood and teeth. She sustained shock and pain. She was taken to the hospital and thereafter had considerable work done on her mouth by various dental physicians who, among other things, stitched her left lip, wired her rear teeth and inserted a metal arch bar around her teeth for six months. Four front and three back teeth on the left side were reimplanted or repositioned. The following teeth were injured: Numbers 7, 8, 9, 23, 24, 25 and 26. Teeth numbers 11, 12 and 13 had been torn from the gums.

For over a year she was compelled to visit several dental physicians. The dental restoration was complicated and took considerable time, during which her teeth were sensitive. She suffered pain during the treatment and also after the treatment which interfered with her sleep. For a period she could not continue her social life because of the trauma she sustained and the appearance of her teeth. When she returned to college later in 1977 she only took one class and failed in the other four. She returned to work for only one-half of the time and pay, and it was not until 1979 that all her teeth were adjusted and she began to resume her former life. Although her prognosis is fair, she will still have to have dental treatment from time to time in the future. In the interim she lost wages of approximately $1,788.

Predicated upon the above, the Court awards $28,000. to the plaintiff against the United States for lost wages, the injuries to her mouth and the pain and suffering caused by the accident. *See Kinney v. General Construction Co.*, 248 Or. 500, 435 P.2d 297 (1967).

ORDERED that judgment be entered accordingly.